STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2023 CA 1307

BRADY BASS

VERSUS

DISA GLOBAL SOLUTIONS, INC.,
CONVENIENT CARE, L.L.C. D/B/A TOTAL OCCUPATIONAL MEDICINE,
RANDY B. BARNETT, D.O., AND PSYCHEMEDICS CORPORATION

JUL 2 4 2024

Judgment Rendered: _____

* * * * *

ON APPEAL FROM THE
NINETEENTH JUDICIAL DISTRICT COURT, DIVISION 23
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER 661547

HONORABLE KELLY E. BALFOUR, JUDGE PRESIDING

* * * * *

| | |
|---|---|
| Brian W. Harrell<br>Metairie, Louisiana | Attorney for Plaintiff-Appellant<br>Brady Bass |
| Brian W. Capell<br>John S. Troutman<br>William J. Heaton<br>Lafayette, Louisiana<br>and<br>Holly H. Williamson, *pro hac vice*<br>Michael Reed, *pro hac vice*<br>Houston, Texas | Attorneys for Defendant-Appellee<br>DISA Global Solutions, Inc. |

**BEFORE: THERIOT, PENZATO, AND GREENE, JJ.**

**GREENE, J.**

Brady Bass, the plaintiff in this suit, appeals a summary judgment dismissing his claims against DISA Global Solutions, Inc. (DISA), the third-party administrator of his employer's drug testing program. DISA answered the appeal. After review, we affirm the judgment and deny the answer to the appeal as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Bass was employed by Coastal Corrosion Control, Inc. (Coastal) as an onshore laborer. In January 2017, Coastal instructed Mr. Bass to present to Convenient Care, L.L.C, d/b/a Total Occupational Medicine (TOM) for employment-related urine and hair sample drug testing. Mr. Bass's urine test was negative, but his hair sample test returned a positive result for marijuana use. According to Mr. Bass, the positive result for marijuana was a false positive, which ultimately negatively impacted his ability to maintain employment in the petrochemical industry.

Mr. Bass filed this suit against DISA, Coastal's third-party drug test administrator; TOM, the drug testing collection facility; and Psychemedics Corporation (Psychemedics), the laboratory that performed the positive hair sample test. He alleged the defendants negligently mishandled his hair sample and conducted the drug test in an unsanitary and contaminated environment, resulting in the false positive drug test for marijuana.[1] Mr. Bass alleged TOM collected the hair sample under the direction of DISA-trained and managed employees at TOM's clinic and then sent the hair sample to Psychemedics for chemical analysis. Mr. Bass also alleged the defendants defamed him by reporting and publicizing the alleged false positive drug test result to national drug testing databases, which prevented him from finding employment and caused him humiliation and embarrassment. Mr. Bass sought damages resulting from the false positive drug test, including lost employment, lost wages, lost benefits, loss of enjoyment of life, defamation, and emotional pain and suffering.

---

[1] In an original petition, Mr. Bass also named Randy B. Barnett, D.O., as a defendant. After the trial court dismissed Mr. Bass's claims against Dr. Barnett, Mr. Bass filed a first amended petition naming Jerome Cooper, D.O., as a defendant, identifying him as DISA's Medical Review Officer. Mr. Bass's claims against Dr. Cooper are not at issue in this appeal.

Specifically as to DISA, Mr. Bass alleged DISA breached its duty of care when it contracted with and improperly allowed TOM and Psychemedics to improperly collect, test, and analyze his hair sample, and falsely designate him as a drug user and as an inactive-status employee, thereby making him ineligible to return to work within zero tolerance petrochemical industry sites because of a false positive drug test. He further alleged that, under its DISA Contractors Consortium Hair Testing substance abuse policy, DISA had "the right of control of any aspect of its drug testing program," including when to test a contractor's employee for drug usage, which employees would be chosen for testing, and how the testing was performed. Mr. Bass also alleged DISA's publication of his false positive test result in national employment drug testing databases constituted defamation.[2]

The three defendants separately filed motions for summary judgment seeking dismissal of Mr. Bass's claims. This Court affirmed a summary judgment dismissing Mr. Bass's claims against Psychemedics, finding Mr. Bass failed to present evidence of Psychemedics's negligence, was not entitled to assert a negligence *per se* claim under certain statutes and regulations, and failed to present evidence of Psychemedics's unprivileged publication to a third party to support his defamation claim. *Bass v. DISA Global Solutions, Inc.*, 2020-0071 (La. App. 1 Cir. 12/30/20), 318 So.3d 909, *writ denied*, 2021-00147 (La. 3/23/21), 313 So.3d 273 *(Bass I)*. This Court reversed a summary judgment dismissing Mr. Bass's claims against TOM and remanded for further proceedings, finding an expert's affidavit created disputed factual issues regarding the validity and integrity of TOM's collection process. *Bass v. DISA Global Solutions, Inc.*, 2019-1145 (La. App. 1 Cir. 6/12/20), 305 So.3d 903, *writ denied*, 2020-01025 (La. 11/4/20), 303 So.3d 651 *(Bass II)*. And, this Court vacated a judgment denying DISA's motion for summary judgment and remanded due to the trial court's failure to rule on

---

[2] On August 6, 2018, the trial court signed a judgment granting DISA's exception of no cause of action, in part, as to Mr. Bass's claims against DISA for wrongful termination; violation of the Louisiana Drug Testing Statute, La. R.S. 49:1001, *et seq.*; constitutional due process violations; violation of HHS Mandatory Guidelines for Federal Workplace Drug Testing; violation of Department of Transportation regulations, 49 CFR §40.149; interference with contract; violation of the Louisiana Human Rights Act; and violation of the Louisiana Employment Discrimination Law. This Court reversed the judgment, finding the trial court could not partially grant an exception of no cause of action and further finding Mr. Bass had stated a cause of action under the Louisiana Drug Testing Statute. *Bass v. DISA Global Solutions, Inc.*, 2018-1102 (La App. 1 Cir. 11/13/18), 2018 WL 5919688, *writ denied*, 2019-0377 (La. 4/29/19), 268 So.3d 1035.

evidentiary objections before ruling on the motion. *Bass v. DISA Global Solutions, Inc.*, 2022-0957 (La. App. 1 Cir. 9/26/2022), 2022 WL 4463074.

In this appeal, we review a February 24, 2023 judgment granting DISA's re-set motion for summary judgment and dismissing Mr. Bass's claims against DISA. In a related appeal, our Docket Number 2024 CA 0024, we review a February 15, 2023 judgment granting TOM's second-filed motion for summary judgment and dismissing Mr. Bass's claims against TOM. On DISA's motion, this Court consolidated this appeal with Docket Number 2023 CA 0024 for oral argument and submission only.

In a single assignment of error in his original appellate brief, Mr. Bass generally asserted that the trial court erred in granting DISA's motion for summary judgment and dismissing his claims against DISA. After DISA correctly pointed out that Mr. Bass's brief was essentially void of substantive argument, Mr. Bass filed a reply brief in which he argues there are genuine issues of material fact regarding whether DISA had a duty "to accurately and reliably collect, report, publish and administrate the drug testing program within the correct legal standards, guidelines, and policies," and whether "DISA's actions in falsely publishing information regarding Brady Bass' alleged illegal drug use for third-party companies to see is defamatory." We note that Mr. Bass does not assign error to nor discuss the trial court's dismissal of his claims against DISA for invasion of privacy and negligence *per se*, and as such, we consider these issues abandoned. *See* Uniform Rules – Courts of Appeal, Rule 2-12.4(B)(4).[3]

## DISCUSSION

### Summary Judgment

An appellate court reviews the grant or denial of summary judgment *de novo* under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. *Bass I*, 318 So.3d at 916; *Bass II*, 305 So.3d at 906. A court shall grant a motion for summary judgment if the motion, memorandum, and admissible supporting documents show there is no genuine issue of material fact and that the mover is entitled

---

[3] Notwithstanding Mr. Bass's failure to raise these issues, we note that, in *Bass I*, this Court determined the trial court properly dismissed Mr. Bass's negligence *per se* claims because the Louisiana Drug Testing statute, Department of Transportation regulations, HIPAA, SAMHSA, and PHMSA guidelines did not apply to Mr. Bass's claims. *See Bass I*, 318 So.3d at 921-923.

to judgment as a matter of law. *See* La. C.C.P. art. 966(A)(3) and (4).[4] The summary judgment movant maintains the burden of proof. La. C.C.P. art. 966(D)(1). Nevertheless, if the movant will not bear the burden of proof at trial on the issue before the court on the motion, his burden is satisfied by pointing out an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id.* Thereafter, the adverse party must produce factual support sufficient to establish he will be able to satisfy his evidentiary burden of proof at trial. *Id.* If the adverse party fails to meet this burden, there is no genuine issue of material fact, and, if appropriate, the court shall render summary judgment against him. La. C.C.P. arts. 966(D)(1) and 967(B).

## Negligence

Because it is the substantive law that determines materiality in a summary judgment setting, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Bass I*, 318 So.3d at 917. Mr. Bass's claims against DISA are based on negligence and are subject to a duty/risk analysis. *See Id.* To prevail at trial, Mr. Bass would have the burden of proving: (1) DISA had a duty to conform its conduct to a specific standard (the duty element); (2) DISA's conduct failed to conform to the appropriate standard (the breach element); (3) DISA's substandard conduct was a cause in fact of his injuries (the cause in fact element); (4) DISA's substandard conduct was a legal cause of his injuries (the scope of duty element); and, (5) proof of actual damages (the damages element). *Id.*

Generally, under Louisiana law, a person has a duty to conform his conduct to the standard of care of an average reasonable man in like circumstances. *Bass I*, 318 So.3d at 917; *Bass II*, 305 So.3d at 907. Thus, for DISA to have breached a duty, it first must have owed a duty, and secondly, it must have acted unreasonably in performing that duty. *Bass II*, 305 So.3d at 907. Whether DISA specifically owed a duty to Mr. Bass as the administrator of Coastal's drug testing program requires explanation of its role as such, as shown by the summary judgment evidence.

---

[4] The Legislature recently amended La. C.C.P. art. 966, but those amendments are not applicable to this appeal. *See* 2023 La. Acts No. 317, §1 (eff. Aug. 1, 2023), and 2023 La. Acts No. 368, §1 (eff. Aug. 1, 2023); *Jones v. Illinois Cent. R.R. Co.*, 2023-0457 (La. App. 1 Cir. 11/3/23), 378 So.3d 104, 106, n.2. Accordingly, we apply the version of La. C.C.P. art. 966 in effect on February 6, 2023, the date of the summary judgment hearing herein.

5

## DISA'S Role as Coastal's Third-Party Drug Administrator

At the time of Mr. Bass's drug test, Coastal, his employer, had entered into a Master Service Agreement (MSA) with DISA to provide third-party drug testing administrative services. Under the MSA, DISA agreed to perform drug testing for Coastal; provide Coastal with a list of approved specimen collection centers; use laboratories certified by the Department of Health and Human Services; provide positive drug test results to DISA authorized Medical Review Officers (MRO); maintain Coastal employee records regarding drug screening status in DISA's online system; and, make such information available to Coastal.[5]

As part of its administrative services, DISA developed a policy titled the DISA Contractors Consortium Hair Testing Policy (DCCHTP), which provided a standardized substance abuse policy for participating owners and contractors, so that contractors' employees could move between owner job sites without the requirement of repeated drug testing to comply with differing standards. Under the DCCHTP, owners and contractors (like Coastal) could access a work-eligibility database that showed whether an employee was compliant with a particular owner's substance abuse policy, thereby allowing the owner and the contractor to staff a particular project with drug-free employees. Employees who were compliant with the DCCHTP were listed as "active" in the work-eligibility database, and those who were not compliant were listed as "inactive."[6] An employee who failed a drug test could complete a rehabilitation program, and if he thereafter passed a "return-to-duty" drug test, DISA would change his status to "active" in the work-eligibility database. Owners and contractors could deny "inactive" employees access to a plant site.

Relevant here, the DCCHTP first required the collection of Mr. Bass's hair sample. In this case, TOM's employee, Matthew Guarisco, collected Mr. Bass's hair sample on

---

[5] The MSA provided that it was for the sole benefit of DISA and Coastal, and that "no third party shall be deemed a third-party beneficiary" of the MSA. On appeal, Bass has not asserted that DISA's contractual duty to Coastal under the MSA to administer its drug program somehow created a duty owed to him as well. *See Thibodeaux v. DISA Global Solutions, Inc.,* 18-651-SDD-RLB (M.D. La. 11/03/03), 2020 WL 6479540, *5 (rejecting an employee's argument that DISA's contractual duty to a contractor somehow "trickled down" to the employee).

[6] Under the DCCHTP, an employee could be listed as "inactive" for no test on file; a positive test; self-identification; failure to submit to a test; failure to follow rehabilitation requirements; or failure to consent to release test results or rehabilitation records.

January 16, 2017. After collecting the sample, the collector places it in a sealed container and sends it to a laboratory for drug testing. In this case, Mr. Guarisco collected the sample and sent it to Psychemedics for testing. If the laboratory determines the sample is positive for prohibited substances, the results are sent to an MRO who reviews the results and interviews the employee to determine if there may be a legitimate reason for the positive result. In this case, Psychemedics determined Mr. Bass's hair sample was positive for marijuana and sent the results to University Services-MRO. Dr. Jerome Cooper, a University Services MRO, interviewed Mr. Bass and determined there was no other legitimate explanation. After the MRO determines such, the MRO confirms the result and reports it to DISA. In this case, Dr. Cooper confirmed Mr. Bass's positive result and reported it to DISA. Upon receipt of an MRO's positive report, DISA designates the employee as "inactive" in its database. In this case, DISA designated Mr. Bass as "inactive" and notified Coastal of Mr. Bass's positive drug test. Coastal temporarily moved Mr. Bass into a warehouse to work.

After being told of his positive drug test, Mr. Bass asked DISA to submit another hair sample for testing. Pursuant to the DCCHTP, DISA informed Mr. Bass that he could pay to have the original sample re-tested but could not have a new sample tested. Eleven days after TOM collected his first hair sample, Mr. Bass had a second hair sample taken, which returned a negative result for marijuana use. Thereafter, he paid to have the original sample re-tested. Psychemedics re-tested the original sample and sent it to another laboratory, Omega Laboratories, for testing; both re-tests returned a positive result for marijuana. Mr. Bass completed the DCCHTP rehabilitation program, and at some point, Coastal returned him to his previous position.

Mr. Bass contends his original hair sample test was a "false positive," because it was negligently mishandled and drug tested in an unsanitary and contaminated environment. As earlier stated, he claims DISA breached a duty to him when it contracted with and allowed TOM and Psychemedics to improperly collect, test, and analyze his hair sample.

## Evidence of DISA's Duty to Mr. Bass

We find Mr. Bass's arguments to be without merit, because there are no genuine issues of material fact as to whether DISA had a duty to him to "accurately and reliably collect" and test his hair sample. DISA, as the third-party administrator of Coastal's drug testing program, did not owe a duty to Mr. Bass to control TOM's actions or Psychemedics's actions.[7] *See Thibodeaux v. DISA Global Solutions, Inc.*, 18-651-SDD-RLB (M.D. La. 11/03/20), 2020 WL 6479540, *4. Louisiana courts recognize that there is no duty to protect against or control the actions of a third party unless a special relationship gives rise to such a duty. *Id.* at 4, n. 67. Mr. Bass has not shown that DISA had such a special relationship with either TOM or Psychemedics, under the DCCHTP or otherwise. DISA did not collect Mr. Bass's hair sample and did not perform the laboratory testing on Mr. Bass's hair sample. *Accord Tilson v. DISA Incorporated,* (5th Cir. 9/10/20), 828 Fed.Appx. 193, 196 (noting plaintiffs' failure to explain how DISA could be liable for negligent collection or testing on a hair sample when DISA performed neither action). Nor has Mr. Bass shown that DISA somehow assumed control over TOM's collection process or Psychemedics's testing procedures. Although Mr. Bass alleges TOM's collector was "DISA-trained and managed," the collector's deposition testimony clearly shows that he was employed by TOM, not DISA, and that Psychemedics provided his collector training, not DISA. Nor does Mr. Bass reference certain "legal standards, guidelines, and policies," in the DCCHTP or otherwise, which merit the imposition of a duty upon DISA to be responsible for the actions of other participants in the drug testing process. As other courts have noted in similar cases, we are under no obligation to "scour the record looking for issues of material fact." *See Tilson,* 828 Fed.Appx. at 197. Accordingly, we find DISA did not owe a duty as a matter of law because Mr. Bass has failed to identify any disputed

---

[7] As the collector of the hair sample for drug testing purposes, TOM had a duty to Mr. Bass to maintain the integrity of the hair sample. *See Williams v. Gulf Coast Occupational Medicine,* Inc., 2015-1130 (La. App. 1 Cir. 2/26/16), 2016 WL 770376, *4 & *5, n.5, *writ denied,* 2016-0577 (La. 5/13/16), 191 So.3d 1056. *Generally,* see cases collected in 1 Empl. Privacy Law §4.58, L. Camille Hebert, *Negligence in testing process.* (Dec. 2023 update). As the testing laboratory, Psychemedics had a duty to Mr. Bass to analyze the sample in a reasonably scientific manner. *See Bass I,* 318 So.3d at 917; *Elliott v. Laboratory Specialists, Inc.,* 588 So.2d 175, 176 (La. App. 5 Cir. 1991), *writ denied,* 592 So.2d 415 (La. 1992). Generally, *see* 55 Causes of Action 2d 573, §14, Beth Holliday, *Causes of Action for Liability of Clinical Laboratories for Negligence* (June 2024 update). However, these duties to not automatically apply to DISA as the third-party administrator of DISA's drug testing program.

8

factual issues as to duty. *Accord Sandoval v. DISA*, 01-17-00846-CV (Tex.App.-Hous. (1 Dist.) 12/6/18), 2018 WL 6379665, *7 (finding DISA had no duty to ensure the accuracy of an employee's drug test result by contracting to provide administrative services to his employer).

## Defamation

We likewise find no merit to Mr. Bass's argument that DISA defamed him by "falsely designating" him as a drug user and publishing his status as an "inactive" employee, thereby making him ineligible to return to work in certain petrochemical industry sites.[8]

To prevail at trial on his defamation claim, Mr. Bass would have the burden of proving: (1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault by the publisher; and (4) resulting injury. *Bass I*, 318 So.3d at 923. Proof of the truth of the alleged defamatory statement is a valid defense in a defamation suit. *See* La. R.S. 13:3602; *Brannan v. Wyeth Laboratories, Inc.*, 526 So.2d 1101, 1105 (La. 1988).

It is undisputed that Psychemedics and Omega Laboratories conducted multiple tests of Mr. Bass's hair sample and all of those tests returned a positive result for marijuana use.[9] Dr. Cooper, the MRO who reviewed Mr. Bass's Psychemedics test, verified the positive result, and reported it to DISA. Pursuant to the DCCHTP, upon receipt of the MRO's positive report, DISA designated Mr. Bass as "inactive" in its database and notified Coastal. Neither DISA's reporting Mr. Bass's test as positive nor its designation of him as "inactive" was false. Since truth is a defense to defamation, we conclude the trial court correctly granted summary judgment to DISA on Mr. Bass's claim. *Accord Tilson*, 828 Fed.Appx. at 197.

---

[8] According to DISA, some owners operate "zero-tolerance" worksites and refuse to allow an "inactive" employee to work at their sites even if that designation later returns to "active."

[9] We note that Mr. Bass's negative test from a different hair sample taken eleven days after the first sample was taken does not create a disputed issue as to the accuracy of the previous positive test results. *See Bass I*, 318 So.3d at 921.

9

## CONCLUSION

On *de novo* review, we conclude the trial court correctly granted summary judgment in this case, because Mr. Bass has provided insufficient evidence to create a disputed factual issue as to "whether DISA had a duty to accurately and reliably collect, report, publish and administrate the drug testing program within the correct legal standards, guidelines, and policies," and as to whether "DISA's actions in falsely publishing information regarding Brady Bass' alleged illegal drug use for third-party companies to see is defamatory." Absent evidence of the duty and falsity elements of his claims, Mr. Bass's claims against DISA fail. *See Williams v. Gulf Coast Occupational Medicine*, 2015-1130 (La. App. 1 Cir. 2/26/16), 2016 WL 770376, *3 (noting that a negative answer to any of the inquires of the duty-risk analysis results in a determination of no liability).

DISA filed an answer to Mr. Bass's appeal, challenging the trial court's denial of its objections to some of Mr. Bass's summary judgment evidence. Because that evidence is immaterial to the issue of whether DISA owed a duty, and based on our affirmance of the trial court's judgment, we conclude DISA's answer to the appeal is moot.

For the foregoing reasons, we affirm the trial court's February 24, 2023 judgment, granting the motion for summary judgment filed by DISA Global Solutions, Inc., and dismissing all of Brady Bass's claims against DISA Global Solutions, Inc. with prejudice. We assess costs of this appeal to Brady Bass.

**JUDGMENT AFFIRMED; ANSWER TO APPEAL DENIED AS MOOT.**

10